# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Chapter 7** |
| AGRIPROCESSORS, INC., | ) | |
| | ) | **Bankruptcy No. 08-2751** |
| Debtor. | ) | |
| | ) | |
| JOSEPH E. SARACHEK, in his | ) | |
| Capacity as Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary No. 10-09153** |
| | ) | |
| v. | ) | |
| | ) | |
| KOSHER COMMUNITY | ) | |
| GROCERY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Trial was held in this adversary case on January 17, 2012. Attorneys Dan Childers and Desiree A. Withers[1], represented Plaintiff Joseph E. Sarachek, in his capacity as Chapter 7 Trustee for Agriprocessors, Inc. Defendant, Kosher Community Grocery, Inc. did not appear at the time of trial, nor did counsel appear on its behalf. The Court took the matter under advisement. This is a core proceeding under 11 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

---

[1] Now known as Desiree A. Kilburg.

## STATEMENT OF THE CASE

Trustee seeks to recover fraudulent conveyances and/or recoverable preferential transfers made by Debtor, Agriprocessors, Inc., to Defendant, Kosher Community Grocery, Inc. Kosher Community Grocery filed an Answer to the Complaint denying the Trustee's claims. Before scheduling trial, Defendant's counsel sought, and was granted, leave to withdraw as counsel. Counsel indicated at hearing that Defendant did not plan to defend the action. Trial was scheduled and Defendant failed to appear. No new counsel has entered an appearance on behalf of Defendant. Plaintiff appeared at trial and presented his case and evidence.

The Court finds Plaintiff has adequately pled his case and appears entitled to the relief requested. However, the Court has concerns about whether Defendant was adequately served with the Order granting defense counsel's Motion to Withdraw and the Court's Order Scheduling Trial. Based on these concerns, the Court will not immediately enter judgment for Plaintiff. Instead, the Court will direct that the above-captioned Order be served on Defendant at its physical address, with its registered agent, and at the address provided by Defendant's former counsel. Defendant will be granted fourteen (14) days from the date of this Order to have counsel enter an appearance and/or decide whether it intends to be

heard on the merits of this case. Failure to enter an appearance will result in judgment being entered in Plaintiff's favor consistent with the following rationale.

## BACKGROUND

The Chapter 7 Trustee, Joseph Sarachek, brought this adversary case seeking to recover fraudulent conveyances under 11 U.S.C. § 548, or preferential transfers under 11 U.S.C. § 547(b). Trustee sought entry of judgment in his favor and against Defendant in the amount of $11,416,799.69, the amount alleged as fraudulent conveyances or recoverable preferences.

Service of the Summons and Complaint were made by "Regular, first class United States mail, postage fully pre-paid" on October 29, 2010, to the following two addresses: (1) Kosher Community Grocery, Inc., 253 Summer Street, Postville, IA 52162; and (2) Charles R. Kelly, As Registered Agent for Kosher Community Grocery, Inc., 136 N. Lawler, P.O. Box 550, Postville, IA 52162. On February 7, 2011, Defendant, represented by M. David Graubard, filed an Answer and seven affirmative defenses. The Court entered a scheduling order on February 25, 2011, setting June 24, 2011, as the deadline for completion of discovery. On August 10, 2011, the Court scheduled a conference to set trial for September 9, 2011.

On August 26, 2011, M. David Graubard filed an Application to Withdraw as Counsel for Defendant. The application indicated:

3

> 1. Applicant ("K&G") was contacted to represent the defendant in this adversary proceeding and, in fact, on February 7, 2011, prepared and filed the answer to the complaint on behalf of defendant.
> 2. Defendant has not signed the proposed retainer agreement that was prepared by Applicant. However, K&G rendered the services in connection with the answer based upon an anticipated retention that never materialized. K&G has rendered services to date with a value of approximately $1,000, although no payment has been paid by or on behalf of the defendant.
> 3. Applicant has been informed by persons involved with the defendant that the defendant does not have any funds to pay for K&G's services and there is no funding available for any future services in connection with discovery and the trial of this action.
> 4. Accordingly, K&G requests that this Court authorize that K&G be relieved as counsel for the defendant in this matter based on Rule 9010 of the Federal Rules of Bankruptcy Procedure and Section 105(a) of the Bankruptcy Code.

(Applic. Withdraw, ECF Doc. No. 12.) A Certificate of Service attached to the Application indicated it had been served on counsel for Plaintiff and, "to Postville Community Grocery, Inc., c/o Meir Rubashkin, at meirrubashkin@gmail.com." (Id.) The Court scheduled a hearing on the Application to Withdraw.

At the hearing, Defendant's counsel indicated he had initially been contacted by the Rubashkin family on behalf of Kosher Community Grocery. He filed an Answer on Defendant's behalf and shepherded the case along. Plaintiff sought some discovery, but defense counsel indicated he would not comply with the requests because he was withdrawing. He stated he was never authorized to be paid, was not authorized to go forward, and a decision was made by Defendant not to fund a defense in this action. Plaintiff's counsel decided a motion to compel

4

was unnecessary.  At the time of hearing on the motion to withdraw as counsel, Plaintiff's counsel indicated she was ready to set trial date.  Defense counsel stated: "[I] honestly do not believe they [Defendant] will even be attempting to get new counsel."  As a result of this exchange, the Court indicated it would grant the Application to Withdraw and provide Defendant with thirty (30) days to obtain counsel and have counsel enter an appearance.  Specifically, the Court stated: "I am going to grant the motion to withdraw. We're going to give them thirty days to find new counsel and then I'm going to ask Mr. Graubard specifically to pass that along to his client to make sure that they have a copy of that order, alright?" (Sept. 9, 2011 Hearing.)  Attorney Graubard responded: "Okay."  (Id.)  On September 9, 2011, the Court entered a Proceeding Memo and Order granting Graubard's Application to Withdraw and scheduling a conference to set trial date for October 14, 2011.

Procedurally, when notice of a docket entry is made to a pro se party, a document entitled "BNC Certificate of Mailing" is entered on the docket.  This certificate would indicate to users that a non-CM/ECF user was sent a physical copy of the order.  No such Certificate is listed on the docket showing that Defendant was served with the Court's September 9, 2011 Order granting withdrawal of counsel.

The Court held a trial scheduling hearing on October 14, 2011. Counsel for Plaintiff appeared. No representative for Defendant appeared, nor had new counsel entered an appearance on Defendant's behalf. The Court continued the conference for two weeks to allow "Defendant to have counsel enter an appearance or be prepared to proceed without counsel at that time." (10/14/11 Order.) The Order further stated: "Attorney for Plaintiff is to initiate the telephone call. Defendant, if appearing without counsel, will submit a contact number to Plaintiff's counsel three days prior to date set for hearing." (Id.) Plaintiff's counsel indicated Trustee had not heard anything from Defendant after Graubard's withdrawal.

Unfortunately, the October 14, 2011 Order resetting the scheduling hearing also did not include any BNC Certificate of Mailing. There is no evidence the order was served on Defendant.

At the October 31, 2011 hearing, counsel for Plaintiff appeared, however Defendant did not appear, nor had counsel entered an appearance on Defendant's behalf. Plaintiff's counsel indicated that no contact had been received from Defendant or counsel representing Defendant. Trial was set for January 17, 2012. Unfortunately, there is again, no BNC Certificate of Mailing for the October 14, 2011 Proceeding Memo and Order scheduling trial.

In preparation for trial, on December 30, 2011, Plaintiff filed his Exhibit List. He also filed a certificate of service stating: "Plaintiff, by and through

6

counsel, hereby certifies that Plaintiff's Exhibit List and proposed Exhibits 1-12, to be offered at trial currently scheduled for January 17, 2011, were served by United States Mail upon Defendant Kosher Community Grocery, Inc., 253 Summer Street, Postville, IA 52162, as of this date." (12/30/11 Certificate of Service.)  At trial, Plaintiff's counsel indicated that copies of the exhibits were served at the following locations: 1) to Defendant's mailing address; 2) to Defendant's registered agent; 3) to Attorney Graubard, Defendant's former counsel.

Trial was held on January 17, 2012.  Counsel for Plaintiff appeared.  No representative, nor counsel, for Defendant appeared.  Plaintiff's counsel stated that Defendant was a small operation that appeared to lack a lot of assets.  The business consisted of a small storefront in Postville that does (or did) a modest amount of business in the community servicing the kosher needs of people who work at the meat-processing plant.  Plaintiff's counsel indicated that to the best of their knowledge Kosher Community Grocery is still operating, but admitted they had only had contact with Defendant through Attorney Graubard.  Plaintiff's counsel had no contact with Defendant at all after Graubard withdrew.

Plaintiff offered fourteen (14) exhibits at trial which were received without objection.  Plaintiff argues the exhibits proved his case-in-chief.  An affidavit from Marc Ross, Plaintiff's expert was included in these exhibits.  The Court took the matter under advisement.

## CONCLUSIONS OF LAW

Trustee seeks to recover $11,416,799.69, from Defendant, Kosher Community Grocery, Inc., as fraudulent conveyances from Debtor, Agriprocessors, Inc., or preferential transfers under 11 U.S.C. § 547(b). Because the Court finds that based on the evidence presented, these funds were fraudulent conveyances under 11 U.S.C. § 548(a)(1)(B)(ii)(I), the Court will not address whether there was a preferential transfer under § 547(b).

The Court is concerned, however, about whether Defendant received adequate notice of trial and other orders of the Court. Accordingly, the Court will address those concerns following the discussion of whether Plaintiff presented sufficient proof to establish his case.

**1. Fraudulent Conveyance Under 11 U.S.C. § 548(a)(1)(B)(ii)(I)**

Section 548 of the Bankruptcy Code, entitled "Fraudulent transfers and obligations," provides in part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

8

>   (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>   (ii)   (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>   (II) was engaged in business or a transaction or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>   (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>   (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.
>
>   . . . .

11 U.S.C.A. § 548(a) (1) (emphasis added).

"The language of Section 548 regarding fraudulent transfers is clear that there are different ways in which such transfers can occur. One alternative is that a transfer have [sic] been made when the debtor was insolvent." In re TransTexas Gas Corp., 597 F.3d 298, 208 (5th Cir. 2010) (citing 11 U.S.C. § 548(a)(1)(B)(ii)(I)). "[I]nsolvency is determined by the 'balance sheet test,' in other words whether the debtor's assets were exceeded by her liabilities at the time of the transfer." Universal Church v. Geltzer, 463 F.3d 218, 226 (2d Cir. 2006) (citing 11 U.S.C. § 101(32)(A); In re Centennial Textiles, Inc., 220 B.R. 165, 174 (Bankr. S.D.N.Y. 1998); In re Durso Supermarkets, Inc., 193 B.R. 682, 701

(Bankr. S.D.N.Y. 1996)). Section 101(32)(A) of the Bankruptcy Code defines "insolvent" as:

> with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title . . . .

11 U.S.C. § 101(A).

> In order to prevail in a fraudulent conveyance action, a plaintiff must establish by a preponderance of the evidence either one of the following: (1) that the debtor made the transfer in question while it was insolvent, or became insolvent because of the transfer; or (2) that the debtor was operating its business after the transfer with an unreasonably small amount of capital.

In re Prime Realty, Inc., 380 B.R. 529, 536 (B.A.P. 8th Cir. 2007).

Under clause B, the plaintiff must also prove that reasonably equivalent value was not exchanged. "The question of reasonable equivalence is 'largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts.'" TransTexas Gas Corp., 597 F.3d at 306 (quoting In re Dunham, 110 F.3d 286, 289 (5th Cir. 1997)).

> To measure reasonably equivalent value, [the court must] judge the consideration given for a transfer from the standpoint of creditors. In re Hinsley, 201 F.3d 638, 644 (5th Cir. 2000). 'The proper focus is on the net effect of the transfers on the debtor's estate, [and] the funds available to the unsecured creditors.' Id.

10

Id. "Further, 'reasonably equivalent value' means that 'the debtor has received value that is substantially comparable to the worth of the transferred property.'"

Id. (quoting BFP v. Resolution Trust Corp., 511 U.S. 531, 548 (1994)).

Plaintiff's trial exhibit 12, the expert report of Marc B. Ross, states in part:

> The purpose of this report is to provide an opinion as to the estimate of value of Agriprocessors, Inc. (The "Company", "Agriprocessors"), and whether Agriprocessors was solvent during the two years prior to the Bankruptcy Filing Date, November 4, 2008, (the "Valuation Period").
> . . . . At all times during the Valuation Period, Agriprocessors was experiencing both cash flow and balance sheet insolvency.  The analysis highlighted within this report shows that during the Valuation Period, Agriprocessors was unable to meet its debts as they came due, and while additional credit was at times extended by its primary secured lenders, First Bank and Metropolitan Life Insurance Company, and its vendors and other third parties, the anticipated cash flows of the business would never be sufficient to relieve the Company's debt burden to these creditors.  Thus, from an operating perspective, the Company was cash flow insolvent.  Additionally, the fair value of the assets of the Company were insufficient to cover the Company's liabilities, thus, from a balance sheet perspective, the Company was insolvent.

(Plaintiff Exh. 12, at 2.)  Mr. Ross's report further stated that based on his valuation report and the estimates of value of Agriprocessors on the Valuation Dates (June 27, 2008, July 29, 2007, December 29, 2006, and June 30, 2006), the value was "between $26,700,000 and $30,330,000." (Id. at 1.)  He concluded that: "Based upon these estimates of value, the value of the sole stockholder's equity shares was $0 as of June 27, 2008, July 29, 2007 and December 29, 2006, and between $996,000 and $1.6 million as of June 30, 2006." (Id.)

11

Plaintiff's exhibit 13 lists payment amounts made by Debtor to Defendant between January 23, 2007, and August 6, 2008. (Plaintiff's Exh. 13.) These payments total $11,449,101.93. (Id.)

Debtor filed for bankruptcy protection on November 4, 2008. Under § 548, the amounts the Trustee seeks to recover were conveyed within two years of the date of the petition filing. Mr. Ross's report shows that Debtor was insolvent at the time that each of these transfers was made. See id. The checks do not indicate what the payments to Defendant were for, and Ross's affidavit supports a conclusion that Debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation." See In re Trans Texas Gas, 597 F.3d at 206. The evidence presented by Plaintiff thus shows that transfers made to Defendant, from Debtor, between January 2007 and November 2008, were fraudulent transfers.

### 2. Service

While the transfers appear to have been fraudulent, which would resolve the case in Plaintiff's favor, the Court has some concerns about the service of notice to Defendant. The Court's review of docket entries shows that Defendant may not have received notice of scheduling orders and the order scheduling trial after its counsel withdrew.

"Where notices are sent to the address last listed by the debtor, in documents filed with the court, as his mailing address due process is satisfied." In re Davis, 275 B.R. 864, 866-67 (B.A.P. 8th Cir. 2002) (citing Bak v. Vincze (In re Vincze), 230 F.3d 297, 298 (7th Cir. 2000); DeVore v. Marshack (In re DeVore), 223 B.R. 193, 196-97 (B.A.P. 9th Cir. 1998); Green Tree Fin. Srv. Corp. v. Karbel (In re Karbel), 220 B.R. 108, 112-13 (B.A.P. 10th Cir. 1998)). "[I]t is the debtor's required duty to file a statement with the court to show any change of address from that previously provided. See Fed. R. Bank. P. 4002(5). The Debtor who fails to keep the court apprised of his proper mailing address has only himself to blame. See DeVore, 223 B.R. at 196-97." In re Davis, 275 B.R. 864, 867 (B.A.P. 8th Cir. 2002). "Service on a pro se debtor is accomplished by mailing a copy of the motion to the debtor at an address shown in the petition or to such other address as the debtor may have designated in a 'filed writing.'" In re Villarreal, 304 B.R. 882, 226 (B.A.P. 8th Cir. 2004).

Additionally, it should be noted that after counsel withdrew, Defendant, as a corporation, needed counsel to enter an appearance and could not proceed pro se.

> Corporations unlike human beings are not permitted to litigate pro se. Rowland v. California Men's Colony, 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993); United States v. Hagerman, 545 F.3d 579, 581 (7th Cir.2008); Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1427 (7th Cir.1985); Nixon, Ellison & Co. v. Southwestern Ins. Co., 47 Ill. 444 (1868); Berg v. Mid–America Industrial, Inc., 688 N.E.2d 699, 704 (Ill. Ct. App. 1997). The reasons courts give for the rule—which really are just variations on the theme

>   of distrust of nonlawyers' ability ever to conduct litigation in a competent and ethical fashion, see, e.g., Strong Delivery Ministry Ass'n v. Board of Appeals of Cook County, 543 F.2d 32, 33–34 (7th Cir.1976); Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1308 (2d Cir.1991); National Independent Theatre Exhibitors, Inc. v. Buena Vista Distribution Co., 748 F.2d 602, 609 (11th Cir.1984), since nonlawyers are not subject to discipline as members of the bar— apply equally to individuals. Yet individuals are permitted to litigate pro se, though not to represent other litigants, Elustra v. Mineo, supra, 595 F.3d at 704; see 28 U.S.C. § 1654, with some exceptions, such as tax advisers in Tax Court proceedings. Tax Ct. R. 200(a)(3); Hawkins v. Commissioner, 85 T.C.M. (CCH) 1530, 2003 WL 21436740, at *2 (U.S.Tax Ct.2003). See also Machadio v. Apfel, 276 F.3d 103, 107 (2d Cir.2002).

In re IFC Credit Corp., 663 F.3d 315, 318 (7th Cir. 2011).

As discussed previously, there is some reason to believe Defendant did not receive proper service of all notices.  It does not appear as though the September 9, 2011 Proceeding Memo and Order granting Attorney Graubard's Application to Withdraw and scheduling a conference to set trial date, the Court's October 14, 2011 Order scheduling a trial setting conference, or the Court's October 31, 2011 Order scheduling trial were served on Defendant.  The docket does reveal that the Court's January 17, 2012 Proceeding Memo, as to the trial, was sent to Defendant at 253 Summer Street, Postville, Iowa 52162 and to its Registered Agent, Charles R. Kelley, at 136 N. Lawler, P.O. Box 550, Postville, Iowa 52162.  The copy sent to Defendant at 253 Summer Street was returned to sender on January 25, 2012, with the notation "Return to Sender, Not Deliverable as Addressed, Unable to Forward."  The Court re-sent the Proceeding Memo to the 253 Summer Street

address and it was again returned to sender on January 30, 2012, with the same notation.

The Court acknowledges that at the time he sought to withdraw, Mr. Graubard informed the Court and the Trustee that defendant did not intend to defend the case. Accordingly, defendant's failure to appear was most likely based on the previously expressed intention not to defend. However, because it is possible that Defendant may not have received notice of the trial date, the Court chooses to allow Defendant one last opportunity to express its intention. Thus, the Court will not enter judgment in Plaintiff's favor at this time. The Clerk of Court will be directed to serve Defendant with this Order at the three addresses the Court has listed for Defendant: 1) the 253 Summer Street address; 2) the address of his registered agent; and 3) the e-mail address listed by Attorney Graubard when serving his client with notice of his withdrawal.

The Court will also direct the Clerk of Court to serve on Defendant the above-captioned order, the motion to withdraw (ECF Doc. No. 12), and the order granting motion to withdraw (ECF Doc. No. 14). Defendant shall have fourteen (14) days from the date of this order, to appear through counsel and defend, or let judgment enter as noted above. To be clear, failure to enter an appearance will result in judgment being entered in Trustee's favor based on the evidence presented at the January 17, 2012 trial.

15

**WHEREFORE**, the Clerk of Court is directed to serve the current order, the Application to Withdraw as Counsel (ECF Doc. No. 12), and the Order Granting the Application to Withdraw as Counsel (ECF Doc. No. 14) on Defendant at the following three locations:

1) Kosher Community Grocery, Inc.
   253 Summer Street
   Postville, IA 52162

2) Charles R. Kelly
   As Registered Agent for
   Kosher Community Grocery, Inc.
   136 N. Lawler
   P.O. Box 550
   Postville, IA 52162

3) Postville Community Grocery, Inc.
   c/o Meir Rubashkin
   meirrubashkin@gmail.com

**FURTHER,** Defendant has fourteen (14) days from the date of this Order to have counsel enter an appearance on its behalf in this action. Failure to enter an appearance will result in judgment being entered in Plaintiff's favor in the amount of $11,416,799.69.

Dated and Entered: April 9, 2012

_____
**THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE**